Are you Ms. Hart? Yes, good morning your honors. Good morning. Mr. Hart, on behalf of Mr. Flocker, I would like to address the 404B issue first. In this case, in this instance, this court first has to answer the question of what a fact finder may consider when determining whether an image falls within the purview of the statute, whether it's lascivious. Can the fact finder go beyond the four corners of the photograph or are they limited to the photograph? I think that's the first question. And I think under Wiegand, it's not an exact, it's not addressing the specific issue but it does say that the viewer's opinion or the viewer's, what the viewer draws from the photograph is not relevant, what's in the viewer's mind. And so I think that that makes the 404B evidence, the four stories that were admitted at the second trial, impermissible. Talk to me a little bit about the stories in terms of where precisely, I want to just verify where precisely they were found and then how the date and times of their, what's the date in relation to where they found them in relation to all of everything that happened? Do you know what I'm saying? Yes, I do. I believe you're wanting to know where on the computer they were created or how they came to be on the computer. And were they close in time to the same dates, I guess, to when the photographs were distributed or transported? I'm not sure if that was presented on the record. I don't recall that offhand. I did not try this case before the district court. I do know that the subjects in the stories are not the subjects in the photographs. So whether they were on the, about the same time, I know they were not at the same time. They're on the same computer. They're on the same computer, yes. But it's my understanding. And it's the defendant's computer. Correct. Your client's computer. A computer that they seized from the office. Okay. Yes. And so, but because they're not, first of all, because the stories don't address the individuals in the pictures or the pictures at issue in count one, they're not tied to that in any way. They're not relevant to that in any way. They're not relevant to explain what the... Isn't it relevant to knowledge and intent? I mean, that's what 404B is meant to be directed at, is knowledge and intent, and don't they bear some relevance on knowledge and intent, and don't we give a lot of discretion to the trial court to make that decision? We do give discretion to the trial courts, but in this instance, that would be putting weight on the viewer's subjective belief of whether the photographs are lascivious, and which is improper, because it's not what the viewer believes. It's what the photograph demonstrates. And so, as I argued in my reply brief, there are individuals who find things like... What's the difference between that, what you just said, and what the viewer believes it demonstrates? Because there are individuals who get sexual gratification from innocuous photos that, you know, as I argued in my reply brief, there's instances where that could make the Sears catalog an illegal photograph. The government also presented an example when they were arguing this before the district court, which highlights why this is a problem, and the government argued before the district court that if this were a person who had an amateur interest in pedophile urology problems, and this photograph had been transferred to another person that says, hey, look at this here, do you see this issue? This child maybe has a medical problem. And if in that instance, the government argues, then that would be a legal photograph. So, how can that be a legal photograph in that context, but be an illegal photograph in this context? That's what the problem is. And that's why you can't go beyond the four corners of the photograph. And do you have any authority for that? That would be Wiegand, that says... Because I didn't read Wiegand that way, but tell me what your view of Wiegand is. Well, Wiegand is addressed in the context of the defendant there argued that the term lascivious was unconstitutionally vague. And that's the context of Wiegand. But what the court says in Wiegand in addressing that issue is specifically... Lasciviousness against the sexual exploitation of children, however, does not consist in the cravings of the person posing the child or in the cravings of his audience. So whether the photograph falls within the statute does not consist of the cravings of the audience. Therefore, if the audience finds it sexually arousing, that doesn't automatically make the photograph... I mean, it's not relevant to whether the photograph is child pornography within the statute. Because there's something called child pornography and there's also something called child erotica. And as I noted in my reply brief, the government has conceded in other instances that child erotica is not illegal. And that's where individuals derive sexual pleasure from photographs that don't fall within the child pornography statutes. And other jurisdictions, and I noted that in my reply brief, in Vallard, in Amaralt, both have said that you cannot go beyond the four corners of the photograph to determine whether the photograph falls within the child pornography statutes. And there does not appear to be a case exactly on point in the Ninth Circuit, but both Amaralt and Vallard rely on Wiegand when they come up with their conclusion. That you cannot go beyond the four corners of the photograph to determine what is lascivious. You cannot look at the viewer's beliefs. And that's because, like in this situation, we don't have statements from the appellant here about these photographs. We have stories that are completely different about different people, different instances that aren't describing this photograph. But that's in determining, isn't Wiegand in determining obscenity, whether the picture is obscene? Yes. All right. We have, there's, it's a different charge here. It's transporting any visual depiction, and the producing of visual depiction involves the use of a minor engaging in sexually explicit conduct. And such visual depiction is such conduct. So this is a criminal charge, I think, different, or which distinguishes it from Wiegand, especially when you consider that evidence is relevant if it has any tendency to make it more or less probable that, in this case, that Mr. Flocker knew the images he sent to the other individual were meant to appeal to a prurient interest. What's, I mean, it seems like that's the distinction. What's your response to that? It is a distinction, but in the big scheme of things, it's a distinction without a difference. Because you're imputing, you're taking what is in Mr. Flocker's mind, his intent, his the photographs are lascivious. Now, if you take that away, the government argues in its example before the district court, it argued these might not be lascivious photographs if these were used in a medical perspective. So if, if they're not lascivious in that context, how can they be lascivious in another context simply because the viewer has, gets some sort of gratification from them, which Wiegand specifically says shouldn't be considered. It's whether, because this involve, the elements in this case, it appears to be distinct from what determines whether something is obscene, and whether or not your client was culpable in transporting these types of pictures. Yes, and the question is, when you say it goes to his intent, that's a subjective, did he have the intent to do this? And so the argument at trial, at both the first and second trial, was not, you know, he inadvertently sent these through the email, accidentally hit send when he didn't mean to. The argument at both the first and second trial was that this was not lascivious. That was the argument at the first trial that trial counsel made, and the jury hung. After that argument, the government introduced, and at the first trial, the defendant did not argue this was somehow accidental. They argued it wasn't lascivious. And so at the second trial, the government says, okay, to establish that these are lascivious, we want to introduce this. When the court asked the government, can you do this, they said yes. Even in the government's answering brief, they say this was introduced for the sole purpose of demonstrating that these photographs were lascivious. So I understand the distinction that you're making between substantively are they lascivious versus the intent element of the offense, but I don't think that you can separate the two because the intent on behalf of Mr. Flocker has to be that he knew these were lascivious. And they're saying, well, he knew these were lascivious because he has these other completely different stories about different actors that occurred at a different place in time, so he has this predilection to read these kind of stories, therefore, that must mean objectively these photographs are lascivious. And I don't think you can make that leap. Do you want to reserve the balance of your time? Yes, please. Okay. Good morning, Your Honors. I'm Camille Skipper. I represent the United States. As the court is aware, this is a very narrow appeal, and it mirrors the very narrow nature of the trials in this case. Specifically, in the trials, the defendant never contested, never really contested that he emailed the images to South Carolina or that he had uploaded images to the internet or that he had possessed images on his computer. At trial, he contested his knowledge and his intent. Before these stories were admitted to trial, during motions and limine, there was a hearing in which the district court heard argument. The government argued primarily that the images were relevant to show the defendant's knowledge and intent.  There were two trials, Your Honor. And the first trial resulted in a hung jury. That's correct. And these photographs were not introduced at the first trial. The photographs? Or the stories. The stories. The stories. The stories were testified to by a case agent in general fashion. None of the stories themselves were admitted into evidence. The specific evidence that's the focus of this appeal. Exhibits 16.1 through 16.4 were not admitted into evidence at the first trial. At some point, didn't the district judge ask the government why it was introducing this stuff? Yes. And what was the response? The response was, and this can be found at ER 96 and 97. Can we summarize it? Primarily. We lost the first trial? Or we didn't get a conviction in the first trial? Now we're going to use it in this trial? Yes. That's more of a summary than I would use. Is that an unfair summary of what they said? Well, I think the summary is that knowledge and intent was the issue that the jury did not, that the jurors told us was an issue in the jury room with regard to one of the evidence. Oh, you had an opportunity to talk to the jurors? Yes. The jurors were pulled after the trial, and there was an opportunity to talk to them. They stayed around to talk to . . . this is not in the record. I'm sorry. They did stay around to talk to the government. Did you try the case? I did. Okay. I tried it with another individual from our office. And so you learned from the jury that there was some doubt, at least in one juror's mind, about knowledge? Knowledge and intent, yes. Okay. So you went back to your case and said, we have this other evidence, which we didn't introduce at the first trial, now we're going to introduce at the second trial. That evidence and additional evidence, that was not the only change between the first and the second trial. We also brought in a forensic pediatrician who testified as to age of the individuals in the images, and we introduced some other evidence concerning the email traffic that preceded the charged email. So there was additional evidence that was provided in addition to the stories themselves. But what's important about the stories is that when the district court asked the government, why do you want to introduce these stories, the government said, primarily—and I'm quoting that word anyway, I can't quote the rest—primarily it is to show knowledge and intent. And we also believe that the stories can be used for other purposes, particularly with regard to count two, the distribution count. The district court rejected that reasoning. The district court said that these stories can only be used for the sole purpose of showing the defendant's knowledge and intent with regard to the transportation count. The defense is pointing to what the government argued were the appropriate uses of the stories. But since the district court rejected that, what the government argued is irrelevant. At this point, we are left with what the court ruled. It took the stories, it read them in their entirety, it made a ruling as to how they could be used, it redacted the stories itself to ensure that the stories conformed to its ruling, and then before the stories were introduced, it read a limiting instruction to the jury advising them that the stories could be used solely for the purpose of showing the defendant's knowledge and intent with regard to the first count, the transportation count, and it reiterated that instruction at the close of the evidence. The stories could not be used, by implication, to show that the images themselves were lascivious. The district court rejected that reasoning. Having done so and instructed the jury that it can only use the stories for the sole purpose of knowledge and intent on count one, we are then left to conclude that the jury did exactly that, absent evidence to the contrary. So for knowledge and intent to count one, that what? The defendant's knowledge that the images that he was sending were lascivious. His intent to send lascivious images to his correspondent in South Carolina. If he had sent the images to the individual in South Carolina but had no knowledge of what he was sending, he had just passed something along, we would have great problems getting a guilty verdict against him because he would not have had the intent to send illegal or contraband images across state lines. Here we had to show that he knew what he was sending. And here, the stories assisted the jury in determining that he knew these were sexual in nature. The conversations that he had surrounding the sending of the images and the other images that were sent back and forth preceding that email were sexual in nature. He had a fetish, I guess I would call it, that these images were of a sexual nature to him. And on that basis, the court found that they were probative. The court exercised its discretion to try to limit the prejudicial value of the images, or excuse me, of the stories. Yes, they're prejudicial. Just about all of the evidence in a case like this is going to be prejudicial. I mean, these were words. The images that were shown to the jury were incredibly prejudicial. There's no way to get around that. However, with regard to the stories, because they were being used as extrinsic evidence of the defendant's knowledge and intent, the judge decided that he needed to lessen the prejudicial value of those so that they only dealt with the issue for which he said they could be used and other material in the stories was redacted. And they were heavily redacted. I would just remind the court that the court also has to find, in order to overturn this conviction, that the constitutional error was more likely than not to have affected the verdict. And looking at the cases, the trials, as they proceeded, this evidence was not error, but even so, it would not have affected the verdict. In the reply brief, the defendant argues that these were close trials. They were not. Neither trial was close. Yes, the first trial hung, the first jury hung, but it wasn't a close trial, the government would argue. This was not, as I stated earlier, this was not the only new evidence that was admitted at the second trial. The testimony of the forensic pediatrician, the government would argue, was very important to the trial, and the deliberations in both trials were not extensive. Even in the first trial, which hung, the deliberations did not go on very long, and in this case, the jury was out for no more than a few hours. So this was not a close case in which this evidence would have pushed the jury over the edge.  The defendant also makes a sufficiency of the evidence argument. I'm prepared to address that in addition to the jury instruction argument, whether the district court abused its discretion with regard to the admission of the expert testimony, and there's the last issue of the specific unanimity instruction. These weren't addressed in the defense counsel's argument. I am happy to address them now if the court has any questions with regard to any of those other issues. Judge Fletcher, do you have any questions regarding those? No, I don't. Okay. If the court has no further questions, I'm willing to submit the matter. Thank you. Thank you. First opening question, do you argue on appeal rule 403 that the prejudicial impact outweighs its importance to the trial, outweighs the probative value? Implicitly, yes. Does that mean you didn't argue that explicitly? I did not cite that rule specifically in my opening brief, but yes, that is essentially what this is. And as to why the district court ruled, I'm not convinced that the district court limited or ruled as narrowly as the government says now. In the government's answering brief here, specifically said the district court admitted the four stories for the sole purpose of proving that the images in the transportation count were lascivious. That's at page 31 of the government's brief. They also say they were admitted only on the issue of whether the image depicting a small boy urinating depicted sexually explicit conduct. So that's what the government's interpretation of the district court's order was when it filed its answering brief here. And I would argue that that is accurate, that that's the main reason why this was admitted. And I don't think that you can separate out knowledge that Mr. Flocker knew they were lascivious with whether they were lascivious. And the government says that these were not closed cases and that the photographs were highly, I'm sorry, incredibly prejudicial, yet at the first trial they didn't convince the jury and the jurors had questions and they said we didn't think he knew that they were lascivious or that they were lascivious. So to say that this was not a closed case I think is an error. And if Your Honor has any questions about the other arguments that I made, I kind of went over in the first part,  the interstate commerce elements of the other counts. I don't have any questions, but I think you've primarily been focused on 404B here. Correct. But I don't have any questions about anything else. Judge Fletcher, do you? No. Okay. Thank you. Thank you both very much. Appreciate your presentations. The case is now submitted.
judges: Fletcher, Hawkins, Murguia